Nichols, Judge,
concurring in the result:
The husband of Señora West does not present the ordinary case of an American civilian resident in a foreign country, e.g., a missionary, a journalist, or a representative of General Motors. He belongs to the Armed Forces of the United States, and is, or in 1975, was present in Spain on active duty. The court’s order, though it reaches the right result, in my view, ignores this aspect of the case and should not do so.
In Schooner Exchange v. McFaddon, 11 U.S. (7 Cranch) 116 (1812), Mr. Chief Justice Marshall had occasion to consider the legal status of members of armed military contingents in friendly foreign countries. He had before him an attempted attachment (technically libel) on a French naval vessel in an American port, but, according to his wont, he addressed the problem in its general aspects, and there can be no doubt he meant to state reciprocal rules applicable to American contingents abroad, whenever there might be such. He has been often cited since. According to him, the territorial sovereign could exclude the contingent entirely, or admit it on any terms he pleased, including complete and utter subjection to all provisions of local or municipal law. If, however, such terms were not expressed in the act of admission, the friendly foreign contingent carried with it its own laws and enjoyed an almost complete immunity from local law. Marshall said the sovereign’s assent to this was implied, the contrary not being asserted. It was "a waiver of all jurisdiction, * * * and permits the foreign general to use that discipline, and to inflict those punishments which the government of his army may require.” p. 140.
When, after World War II, it became apparent that the presence of American contingents on friendly foreign soil would long endure, our policy makers determined that *685 legislation was necessary, and legislation was enacted, and they made express agreements with many foreign countries pursuant to or outside the legislation. See Wilson v. Girard, 354 U.S. 524 (1957); Gallagher v. United States, 191 Ct. Cl. 546, 423 F. 2d 1371, cert. denied, 400 U.S. 849 (1970). When the problem raised by Señora West first surfaced, I naturally supposed there would be agreements to cover so foreseeable a case, but if there be any such, government counsel have never been persuaded to divulge them. I am compelled to suppose, and do suppose, that there are no relevant agreements. It does not follow, however, that the status of the American soldier, sailor, or airman, presently on active duty on friendly foreign soil, is assimilated to the status of a General Motors representative. It follows that the Marshall system of implied assents remains the only means of determining the law applicable to the transaction to be dealt with.
How Marshall would see it we can never know for sure, but it appears to me that the implied assent of Spain to immunity of American military personnel, whatever its full scope may be, primarily relates to internal and disciplinary matters and cannot be extended to transactions with Spanish nationals and voluntarily entered under the very wing of Spanish law. The implications are all the other way, in such a case. An American soldier, sailor, or airman in Spain, wishing to marry a Spanish national, could take her outside the country for the nuptials, or make a pre-nuptial agreement as the Code specifies. The performance of weddings is in civil law countries a governmental function. The American service bridegroom who takes his Spanish bride to a Spanish registry office, or whatever the facility is called in that country, with no prenuptial agreement, indicates by the strongest implication that the marriage will be governed by Spanish law in all its incidents. Under the Spanish code, it is plain he has agreed by contract to the system of community property. His superiors could have forbidden such marriages, or they could have made an agreement with the Spanish concerning them, or they could have obtained legislation. In the instance of the Wests, they did none of those things so far as we are told, and, therefore, they consented by implication too.
I am not much concerned by the fact that neither party urged the points above-expressed. Defendant took a stand we all reject as unsound. Plaintiff, pro se, did not argue the *686 law at all, but left it to us to figure the case out. The amicus was interested in his own case, which involved only civilians. It seems to me incumbent on us to put the matter on the soundest possible grounds, and neither the majority nor I come to our conclusions with much outside help. The question of the status of forces, and of plaintiffs husband being a serviceman, was raised in the Minor order, 215 Ct. Cl. 1053 (1978), and defendant should have dealt with it. It seems to me wrong to argue domicile and residence, and ignore the service connection. The legal rights and duties of a serviceman belonging to a military contingent on friendly foreign soil should be, and I believe are, determined with reference to international law relating to such contingents, in the absence of express agreements. I am sorry to have to come to this conclusion belatedly, but the panel will not disavow the benefits of fresh "lucubration” in this "uncharted field.”